# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## CASE NO.:

MICHAELA BITTNER, on behalf of herself
and all others similarly situated,

     Plaintiffs,

                                          **CLASS ACTION**

v.                                             **JURY DEMAND**

MARRIOTT INTERNATIONAL INC.,

     Defendant.
_____/

## CLASS ACTION COMPLAINT

Plaintiff Michaela Bittner ("Plaintiff") files this class action Complaint on behalf of herself and all others similarly situated residents against Marriott International Inc. ("Defendant"), and as grounds state as follows

## NATURE OF ACTION

1.     Defendant Marriott International Inc. ("Defendant") is a global provider of lodging with more than 6,700 properties across 130 countries and territories.  In 2016, Defendant finalized its merger with Starwood Hotels and Resorts Worldwide, LLC ("Starwood"), another global hotel chain including brands such as Westin Hotels and Resorts and Sheraton.

2.     In merging Starwood into Defendant's Marriott brand, Defendant continued to maintain separate guest reservation databases for Marriott and Starwood hotels.  When making reservations with Starwood-branded hotels, customers are required to provide extensive Sensitive Personal Information ("SPI").

3.     On November 30, 2018, Defendant announced that it had discovered that there had been unauthorized access to the Starwood guest reservation database (the "Data Breach" of

the "Starwood Database"), which contains information on approximately 500 million guests, since 2014.  Defendant also announced that a forensic investigation of the Data Breach showed that SPI for approximately 327 million guests, including names, mailing addresses, phone numbers, email addresses, passport numbers, Starwood Preferred Guest account information, dates of birth, gender, arrival and departure information, reservation dates, communication preferences, and payment card numbers and expiration dates had been copied and encrypted.

4.     The SPI of Plaintiff and the other members of the Classes, which Defendant failed to protect and allowed to be accessed and taken by thieves, can be and is used to perform identify theft, make fraudulent charges, and open unauthorized new accounts.

5.     Defendant also admitted in its announcement that it was first alerted to this data breach on September 8, 2018, though it delayed informing its customers of the breach for over 80 days until November 30, 2018.

6.     Defendant has made public statements apologizing for the Data Breach but has not made any effort to assist or recompense affected customers apart from offering a one-year subscription to "WebWatcher," which Defendant claims monitors internet sites where SPI is shared and generates an alert for subscribers if evidence of their personal information is found.

7.     Plaintiff is an individual who provided their SPI to Defendant as part of their purchase of lodging, and whose SPI has been compromised as a result of the Defendant's failure to maintain reasonable and adequate security measures to safeguard their SPI.  Plaintiff is seeking damages, restitution, and injunctive relief requiring Defendant to, *inter alia*, implement and maintain reasonable and effective security practices.

## PARTIES

8.     Plaintiff Michaela Bittner is a citizen and resident of Florida.  Bittner stayed at affected Starwood properties during the relevant time period, is a Starwood Preferred Guest ("SPG"), and received an email from Defendant advising that her personal information was compromised via the Starwood Database.  As detailed herein, Marriott failed to properly secure the SPI of Bittner, who faces the imminent and impending threat of harm from the increased threat of identity theft and fraud due to her SPI being made available to the Internet black market and available for misuse by criminals.

9.     Defendant Marriott International Inc. is a public corporation trading on the NASDAQ stock exchange.  Defendant represents itself as a leading global lodging company with more than 6,700 properties across 130 countries and territories, and revenues of more than $22 billion in fiscal year 2017.  Defendant is incorporated in Delaware with its headquarters at 10400 Fenwood Road, Bethesda, Maryland 20817.

## JURISDICTION AND VENUE

10.     This Court has jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d)(2).  The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000.

11.     Venue is proper in the Southern District of Florida under 28 U.S.C. § 1391(b)(2) because the Florida plaintiff resides within it, the Defendant is based within it, a substantial part of the events or omissions giving rise to the claim occurred within this district, and Defendant caused harm to class members residing in this district.

12.     This Court has personal jurisdiction over the Defendant because it is headquartered in Maryland.

13.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant maintains Starwood properties in this District and regularly conducts business in this District.

14.     All conditions precedent to this action have occurred, been performed, or have been waived.

## FACTUAL ALLEGATIONS

### Defendant Collects Significant Amounts of SPI

15.     In order to make a reservation at a Starwood property through the Starwood Database, customers must provide extensive SPI including, *inter alia*, their names, mailing addresses, phone numbers, email addresses, passport numbers, Starwood Preferred Guest account information, dates of birth, gender, arrival and departure information, reservation dates, communication preferences, and payment card numbers and expiration dates.  If making a reservation abroad, customers may also be required to provide passport information, including their passport number, when making their reservation and/or when checking in to the hotel.

16.     On its website, Defendant acknowledges its great responsibility to safeguard its customers' SPI.  Defendant's "Privacy Statement"[1] promises that the company "seek[s] to use reasonable organizational, technical and administrative measures to protect Personal Data." Defendant's Privacy Statement further provides that Defendant will "retain your Personal Data for the period necessary to fulfill the purposes outlined in this Privacy Statement unless a longer retention period is required or permitted by law."

17.     Defendant also expressly represents the fact that it is "Privacy Shield Certified," and directs customers to its "Privacy Shield Guest Privacy Policy" (the "Privacy Shield

---

[1] Available at https://www.marriott.com/about/privacy.mi (last viewed November 30, 2018).

4

Policy").[2]   The Privacy Shield Policy promises customers that, *inter alia*, Defendant "use[s] reasonable physical, electronic, and administrative safeguards to protect your Personal Data from loss, misuse and unauthorized access, disclosure, alteration and destruction, taking into account the nature of the Personal Data and the risks involved in processing that information."

18.     However, and despite its stated policies, Defendant did not prevent its Starwood Database, containing the SPI of hundreds of millions of paying customers, from being continually accessed for over four years, since 2014, resulting in the loss of a staggering amount of SPI and causing serious damages to Plaintiffs and the other members of the class.

**The Data Breach**

19.     On November 30, 2018, Defendant announced that it had discovered that there had been unauthorized access to the Starwood Database since 2014.  The Starwood Database contains information on approximately 500 million guests who made a reservation at a Starwood property.

20.     Defendant also announced that a forensic investigation of the Data Breach showed that SPI for approximately 327 million guests, including names, mailing addresses, phone numbers, email addresses, passport numbers, Starwood Preferred Guest account information, dates of birth, gender, arrival and departure information, reservation dates, communication preferences, and payment card numbers and expiration dates, had been copied and encrypted.  A review of Defendant's Privacy Statement shows that Defendant also collects (and may have had exposed) additional data including, *inter alia*:

- "Financial information in limited circumstances;"

- Language preference;

---

[2]  Available at  https://www.marriott.com/about/global-privacy.mi  (last viewed November 30, 2018).

- Date and place of birth;

- Important dates, such as birthdays, anniversaries and special occasions;

- Employer details;

- Travel itinerary, tour group or activity data;

- "Prior guest stays or interactions, goods and services purchased, special service and amenity requests;"

- Geolocation information; and

- "Social media account ID, profile photo and other data publicly available, or data made available by linking your social media and loyalty accounts."

21.     Defendant's Privacy Statement further provides that in "more limited circumstances" Defendant may collect, *inter alia*:

- Data about family members and companions, such as names and ages of children;

- Biometric data, such as digital images;

- "Images and video and audio data via: (a) security cameras located in public areas, such as hallways and lobbies, in our properties; and (b) body-worn cameras carried by our loss prevention officers and other security personnel;" and

- "Guest preferences and personalized data ('Personal Preferences'), such as your interests, activities, hobbies, food and beverage choices, services and amenities of which you advise us or which we learn about during your visit."

22.     Defendant's announcement states that Defendant was made aware of the Data Breach for the first time on September 8, 2018, when it received an alert from an internal security tool regarding an attempt to access the Starwood Database.  Defendant subsequently began an investigation, and claims that on November 19, 2018, it was able to decrypt the information and determine that the contents were from the Starwood guest reservation database.

23.     Defendant's announcement states that Defendant "deeply regrets this incident happened," and Defendant's President and Chief Executive Officer Arne Sorenson conceded in a

press release that Defendant "fell short of what our guests deserve and what we expect of ourselves," and would be "using lessons learned to be better moving forward."

**The Enormous Effects of the Data Breach on Plaintiffs and the Classes**

24.     The ramifications of Defendant's failure to protect the SPI of its customers is severe.  The veritable buffet of types of SPI lost by Defendant allows criminals to commit identify theft, fraudulently open accounts, create fraudulent payment cards and commit an almost endless amount of mischief.

25.     As just one example, the theft of one's passport information is devastating, with such information being particularly coveted by criminals, according to a senior expert with Gartner Inc., because "[i]f you're signing up for a new loan, if you're renting a car in a foreign country, if you're opening a bank account – you always have to present identity documents" like a passport.  One website devoted to protecting against identify theft states that "[i]n the long run, a passport can prove to be a more serious matter than having your driver's license stolen.  When this important document falls prey to a malicious individual, there is a great chance that it will be used to commit identity theft."[3]

26.     As a result, Plaintiffs and members of the Classes now face a real and immediate risk of identity theft and financial fraud associated with the disclosure of their SPI, and will need to monitor, or continue to monitor, their bank accounts, credit and tax filings for an indefinite duration.

27.     The processes of discovering and dealing with the repercussions of identity theft are time consuming and difficult.  The Bureau of Justice Statistics found that "among victims

---

[3] *See* https://spamlaws.com/passport-identity-theft.html (last viewed November 30, 2018).

who had personal information used for fraudulent purposes, 29% spent a month or more resolving problems."[4]

28.     Additionally, there is commonly lag time between when harm occurs and when it is discovered, and also between when personal information is stolen and when it is used. According to the U.S. Government Accountability Office, which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[5]

29.     There is a very strong probability that those impacted by Defendant's failure to secure the SPI could be at risk of fraud and identity theft for extended periods of time.

30.     As a result of the Defendant's negligent security practices, Plaintiff and the Class have been exposed to fraud and a heightened and imminent risk of fraud and identity theft. Plaintiff and the Class must now and in the future closely monitor their financial accounts to guard against identity theft and tax fraud. Plaintiff and the Class may be faced with fraudulent debt, or incur costs for, among other things, paying monthly or annual fees for identity theft and credit monitoring services, obtaining credit reports, credit freezes, and other protective measures to deter, detect, and mitigate the risk of identity theft and fraud.

---

[4] Erika Harrell and Lynn Langton, *Victims of Identity Theft*, *2012*, (Bureau of Justice Statistics Dec. 2013), available at http://www.bjs.gov/content/pub/pdf/vit12.pdf (last viewed November 30, 2018).

[5] *See* U.S. Government Accountability Office, GAO Report to Congressional Requesters, *Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown* (June 2007), available at http://www.gao.gov/new.items/d07737.pdf (last viewed November 30, 2018).

## CLASS ACTION ALLEGATIONS

31.     Plaintiff brings this action on behalf of herself and other similarly situated and as a class action under Federal Rules of Civil Procedure 23(a), (b)(2) and (b)(3), seeking damages and equitable relief on behalf of the following "National Class":

> All persons who provided their SPI to Defendant and whose SPI was compromised as a result of the Data Breach.

32.     In the alternative, Plaintiff brings this action on behalf of the following subclasses:

> All residents of Florida who provided their SPI to Defendant and whose SPI was compromised as a result of the Data Breach (the "Florida Subclass").

33.     Excluded from the National Class and each sub-class (collectively, the "Classes") are: Defendant; its officers and directors; its parent companies, subsidiaries and affiliates; federal governmental entities and instrumentalities of the federal government; and states and their subdivisions, agencies and instrumentalities.

34.     The Classes are so numerous that joinder of all members is impracticable. While Plaintiff does not know the exact number of the members of the Classes, based on Defendant's statement that the Data Breach involved the SPI of hundreds of millions of individuals there is no question that the National Class, and each subclass, are sufficiently numerous.

35.     Common questions of law and fact exist as to all members of the Classes. Such questions of law and fact common to the Classes includes, but are not limited to:

> (a)     Whether Defendant engaged in the wrongful conduct alleged herein;

> (b)     Whether Defendant owed a duty to Plaintiff and members of the Class to adequately protect their SPI;

(c)     Whether Defendant breached its duty to adequately protect the SPI of Plaintiff and members of the Class;

(d)     Whether Defendant should have known that its data systems and processes were vulnerable to attack and taken sufficient steps to prevent such attack;

(e)     Whether Defendant's conduct, including its failure to act, was the proximate cause of, or resulted in, the breach of Defendant's Starwood Database;

(f)     Whether Plaintiff and members of the Class suffered legally cognizable damages as a result of Defendant's conduct and are entitled to recover damages;

(g)     Whether Plaintiff and members of the Class are entitled to equitable relief.

36.     Plaintiff's claims are typical of the claims of the members of the Class, and Plaintiff will fairly and adequately protect the interests of the Class.  Plaintiff and all members of the Class are similarly affected by Defendant's wrongful conduct in that their information was exposed to unauthorized users in violation of federal, state, and common law.

37.     Plaintiff's claims arise out of the same common course of conduct giving rise to the claims of the other members of the Class.  Plaintiff's interests are coincident with, and not antagonistic to, those of the other members of the Class.  Plaintiff is represented by counsel who are competent and experienced in the prosecution of security breach and class action litigation.

38.     The questions of law and fact common to the members of the Class predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

39.     Class action treatment is a superior method for the fair and efficient adjudication of the controversy, in that, among other things, such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously,

efficiently and without the unnecessary duplication of evidence, effort and expense that numerous individual actions would engender.  The benefits of proceeding through the class mechanism, including providing injured persons or entities with a method for obtaining redress for claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in management of this class action.

40.     The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendant.

### FIRST CLAIM FOR RELIEF
**Negligence**
**(On Behalf of Plaintiffs and the Classes)**

41.     Plaintiffs incorporate all prior paragraphs as though fully set forth herein.

42.     In collecting the SPI of Plaintiff and the Classes, Defendant owed those individuals a duty to exercise reasonable care in safeguarding and protecting that information. This duty included, among other things, maintaining and testing Defendant's security systems and taking other reasonable security measures to protect and adequately secure the SPI of Plaintiffs and the Classes from unauthorized access and use.

43.     Defendant's security systems and procedures for handling the SPI of customers were intended to affect Plaintiff and the Classes.  Defendant was aware that by soliciting and storing such sensitive information, it had a responsibility to take reasonable security measures to protect the data from being stolen.

44.     Defendant further had a duty to timely disclose to Plaintiff and the Classes that their SPI had been or was reasonably believed to have been compromised.  Timely disclosure is appropriate so that Plaintiff and the Classes could, among other things, report the theft of their

passport numbers to the State Department, monitor their credit reports for identity fraud, obtain credit freezes, undertake appropriate measures to avoid unauthorized charges on their debit card or credit card accounts, and change or cancel their debit or credit card PINs (personal identification numbers) to prevent or mitigate the risk of fraudulent cash withdrawals or unauthorized transactions.

45.     Defendant further had a duty to destroy the SPI of Plaintiff and the Classes from its databases within a reasonable amount of time after it was no longer necessary for Defendant to retain such information in order to mitigate the risk of loss of individuals' SPI in the event of a data breach.

46.     Defendant breached its duty to exercise reasonable care in protecting the SPI of Plaintiff and the Classes by failing to implement and maintain adequate security measures to safeguard such information, failing to monitor its systems to identify suspicious activity, allowing unauthorized access to the SPI of Plaintiff and the Classes, and failing to adequately encrypt or otherwise prevent unauthorized access to such SPI.

47.     Defendant further breached its duty to timely notify Plaintiff and the Classes about the Data Breach.  Defendant became aware of the Data Breach as early as September 8, 2018, but informed the public of the Data Breach over 80 days later, on November 30, 2018.

48.     As a direct and proximate result of Defendant's failure to exercise reasonable care and use commercially reasonable security measures, the SPI of Plaintiff and the Classes was accessed, copied and encrypted by unauthorized individuals who may have used the information to commit identity theft and fraud, or conveyed the information to others to do so.  But for Defendant's failure to implement and maintain adequate security measures to protect individuals' SPI and failure to monitor its systems to identify suspicious activity, the SPI of

Plaintiff and the Classes would not have been stolen, and Plaintiff and the Classes would not be at an increased risk of identity theft and financial fraud for years into the future.

49.     Neither Plaintiff nor members of the Classes contributed to the Data Breach, nor did they contribute to Defendant's employment of insufficient security measures to safeguard individuals' stored SPI.

50.     There is a causal connection between Defendant's failure to implement reasonable security measures to protect individuals' SPI and the injury to Plaintiff and the Classes.  When individuals have their SPI stolen, they are at risk for additional identity theft.

51.     Defendant is morally to blame for not protecting individuals' SPI by failing to take reasonable security measures.  If Defendant had taken reasonable security measures, data thieves would not have been able to take the SPI of hundreds of millions of Defendant's customers.

52.     The policy of preventing future harm weighs in favor of finding a special relationship between Defendant and the Classes.  Defendant's customers who provide their SPI to Defendant rely on Defendant to keep their information safe and in fact are required to share sensitive personal data with Defendant as a condition of doing business with Defendant.  If companies are not held accountable for failing to take reasonable security measures to protect their clients' SPI, then they will not take the steps that are necessary to protect against future cyber-attacks and data breaches.

53.     It was foreseeable that if Defendant or its agents did not take reasonable security measures, the SPI of Plaintiffs and the Classes would be stolen.  Companies like Defendant face a high threat of security breaches due in part to the large amounts and type of information they store and the value of such information on the black market.  Defendant should have known to

take all reasonable precautions to secure individuals' SPI, especially in light of recent data breaches and publicity regarding cyberattacks.

54.     Defendant's negligence was a substantial factor in causing harm to Plaintiffs and members of the Classes.

55.     Plaintiff and the Classes seek compensatory damages and punitive damages with interest, the costs of suit and attorneys' fees, and other and further relief as this Court deems just and proper.

**SECOND CLAIM FOR RELIEF**
**Breach of Contract**
**(On Behalf of Plaintiff and the Classes)**

56.     Plaintiff incorporates all paragraphs 1 through 40 as though fully set forth herein.

57.     Defendant's Privacy Statement promises that the company "seek[s] to use reasonable organizational, technical and administrative measures to protect Personal Data," and will "retain your Personal Data for the period necessary to fulfill the purposes outlined in this Privacy Statement unless a longer retention period is required or permitted by law."

58.     Defendant also expressly represents the fact that it is "Privacy Shield Certified," and directs customers to its Privacy Shield Policy.[6]   The Privacy Shield Policy promises customers that, *inter alia*, Defendant "use[s] reasonable physical, electronic, and administrative safeguards to protect your Personal Data from loss, misuse and unauthorized access, disclosure, alteration and destruction, taking into account the nature of the Personal Data and the risks involved in processing that information."

59.     Defendant's privacy policies constitute an agreement between Defendant and individuals who provide their SPI to Defendant.

---

[6] *See* https://www.marriott.com/about/global-privacy.mi (last viewed November 30, 2018).

60.     Defendant has breached its agreement with Plaintiff and the Classes to protect their SPI by (1) failing to implement security measures designed to prevent this attack, (2) failing to employ security protocols to detect the unauthorized network activity, and (3) failing to maintain basic security measures such as complex data encryption so that if data were accessed or stolen, it would be unreadable.

61.     Plaintiff and the Classes have been damaged by Defendant's breach of its contractual obligations because their SPI has been compromised and they have suffered damages, and/or are at an increased risk for identity theft and fraud.  Plaintiff and the Classes have been deprived of the value of their SPI and have lost money and property as a result of Defendant's unlawful and unfair conduct.

62.     Plaintiff individually and on behalf of the Classes seeks recovery for damages suffered by members of the classes, equitable relief, and injunctive relief requiring Defendant and its agents to implement safeguards consistent with its contractual promises.

### THIRD CLAIM FOR RELIEF
**Breach of Implied Contract**
**(On Behalf of Plaintiff and the Classes)**

63.     Plaintiff incorporates by reference paragraphs 1 through 40 as if fully set forth herein.

64.     Plaintiff brings this cause of action on behalf of the Classes and, to the extent necessary, in the alternative to their breach of contract claim.

65.     When Defendant's customers paid money and provided their Personal Information to SPI in exchange for Defendant's services, they entered into implied contracts with Defendant pursuant to which Defendant agreed to safeguard and protect such information and to timely and accurately notify them if their data had been breached and compromised.

66.     Defendant solicited its customers to provide their SPI as part of the reservation process.  These customers accepted Defendant's offers and provided their SPI to Defendant.  In entering into such implied contracts, Plaintiff and the Classes assumed that Defendant's data security practices and policies were reasonable and consistent with industry standards, and that Defendant would use part of the funds received from Plaintiff and the Classes to pay for adequate and reasonable data security practices.

67.     Plaintiff and the Classes would not have provided and entrusted their SPI to Defendant in the absence of the implied contract between them and Defendant to keep the information secure.

68.     Plaintiff and the Classes fully performed their obligations under the implied contracts with Defendant.

69.     Defendant breached its implied contracts with Plaintiff and the Classes by failing to safeguard and protect their SPI and by failing to provide timely notice that their SPI was compromised as a result of a Data Breach.

70.     As a direct and proximate result of Defendant's breaches of the implied contracts, Plaintiff and the Classes sustained actual losses and damages as described herein

### FOURTH CLAIM FOR RELIEF
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Classes)**

71.     Plaintiff incorporates paragraphs 1 through 40 as though fully set forth herein.

72.     Plaintiff alleges in the alternative that they have no adequate remedy at law and bring this unjust enrichment claim on behalf of the Classes.

73.     Plaintiff and the Classes conferred a monetary benefit on Defendant in the form of fees paid to Defendant for Defendant's services.  Plaintiff and the Classes also provided their SPI to Defendant.

74.     Defendant appreciated or had knowledge of the benefits conferred upon it by Plaintiff and the Classes.

75.     The payments made by Plaintiff and the Classes to Defendant should have been used by Defendant, in part, to pay for the costs of reasonable data privacy and security practices and procedures.

76.     As a result of Defendant's conduct, Plaintiff and the Classes suffered actual damages in an amount equal to the difference in value between Defendant's services combined with the reasonable data privacy and security practices and procedures that Plaintiff and Classes paid for, and the inadequate services without reasonable data privacy and security practices and procedures that they received.

77.     Under principles of equity and good conscience, Defendant should not be permitted to retain the money belonging to Plaintiff and the Classes because Defendant failed to implement (or adequately implement) the data privacy and security practices and procedures that Plaintiff and members of the Classes paid for.

78.     Defendant should be compelled to disgorge into a common fund for the benefit of Plaintiff and the Classes all unlawful or inequitable proceeds received by it.

79.     A constructive trust should be imposed upon all unlawful or inequitable sums received by Defendant traceable to Plaintiffs and the Classes.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for the following relief:

a.      That the Court certify this case as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2), and/or (b)(3), pursuant to Fed. R. Civ. P. 23(g), appoint the named Plaintiff to be Class representative and the undersigned counsel to be Class counsel;

b.      That the Court award Plaintiff and the Classes appropriate relief, including actual and statutory damages, restitution, and disgorgement;

c.      That the Court award Plaintiff and the Classes equitable, injunctive and declaratory relief as may be appropriate under applicable state laws;

d.      That the Court award Plaintiff and the Classes actual damages, compensatory damages, statutory damages, and statutory penalties, to the full extent permitted by law, in an amount to be determined;

e.      That the Court award Plaintiff and the Classes pre-judgment and post-judgment interest;

f.      That the Court award Plaintiff and the Classes reasonable attorneys' fees and costs as allowable by law; and

g.      That the Court award Plaintiff and the Classes such other, favorable relief as allowable under law or at equity.

## DEMAND FOR JURY TRIAL

Plaintiff and the Class requests a jury trial for any and all Counts for which a trial by jury is permitted by law.

Dated:   <u>December 13, 2018</u>

                                             Respectfully submitted,

                                             _s/   Lance A. Harke_____
                                             Lance A. Harke, Esq.
                                             lharke@harkelaw.com
                                             Florida Bar No. 863599
                                             Tammi A. Calarco, Esq.
                                             tcalarco@harkelaw.com
                                             Florida Bar No. 121788
                                           **HARKE LAW LLP**
                                             9699 NE Second Avenue
                                             Miami Shores, FL 33138
                                             Telephone:  (305) 536-8220
                                             Facsimile:  (305) 536-8229